PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:(213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Defendants
THE AMERICAN BOTTLING COMPANY
and KEURIG DR PEPPER INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DISTRICT

| | |
|---|---|
| NEUROBRANDS, LLC,<br><br>                        Plaintiff,<br><br>        v.<br><br>THE AMERICAN BOTTLING COMPANY, a Delaware Corporation; and KEURIG DR PEPPER INC., a Delaware Corporation,<br><br>                        Defendants. | CASE NO.: 2:21-CV-01772-FLA-AS<br><br>**(1) DEFENDANTS' NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF BRADFORD CORNELL;**<br><br>**<u>Separate Cover:</u>**<br><br>**(2) DECLARATION OF VIRGINIA F. MILSTEAD IN SUPPORT; and**<br><br>**(3) [PROPOSED] ORDER.**<br><br>Removed: Feb. 25, 2021<br>Hon. Fernando L. Aenlle-Rocha<br>Courtroom: 6B<br>Date: March 17, 2023<br>Time: 1:00 p.m. |

REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED
UNDER SEAL

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on March 17, 2023, at 1:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6B located at 350 West 1st Street, Los Angeles, California 90012, Defendants The American Bottling Company and Keurig Dr Pepper Inc. ("Defendants") will, and hereby do, present for hearing by the Court, the Honorable Fernando L. Aenlle-Rocha presiding, this Motion To Exclude the report, testimony and opinions of Plaintiff's purported damages expert, Bradford Cornell.

This Motion is made pursuant to Federal Rules of Evidence 702 and 703. It is based on this notice, the memorandum of points and authorities that follows, the Declaration of Virginia Milstead ("Milstead Decl.") submitted herewith and the exhibits attached thereto, the files and records in this action, the arguments of counsel, and any other items the Court may consider.

This motion is made following the conference of counsel pursuant to Civil Local Rule 7-3, which took place on November 21, 2022.

DATED: November 30, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Peter B. Morrison_____
PETER B. MORRISON
Attorneys for Defendants
THE AMERICAN BOTTLING COMPANY
and KEURIG DR PEPPER INC.

i

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................................1

I.    Preliminary Statement ...............................................................................1

II.    Background ................................................................................................5

    A.    Factual Background .........................................................................5

    B.    Cornell's Damages Report ..............................................................8

III.    The Court Should Exclude Cornell's Report And Testimony..............11

    A.    Cornell Failed To Use An Objectively Reliable Methodology .................................................................................12

    B.    Cornell Failed To Verify Independently The Facts On Which He Relied ...........................................................................16

        1.    Cornell Impermissibly Failed To Independently Examine Or Verify Any "Facts" Supporting His Supposed "Opinions"..............................................................16

        2.    Cornell's Lack of Industry Expertise Does Not Excuse His Failure To Investigate The Factual Assumptions Underlying His Report.............................21

    C.    Cornell Failed To Consider Any Alternative Explanations For Neuro's Declining Case Sales.......................22

CONCLUSION.................................................................................................25

## TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Avila v. Willits Enironmental Remediation Trust,*
633 F.3d 828 (9th Cir. 2011) ..................................................................... 4, 22

*Baker v. Firstcom Music,*
No. LA 16-cv-08931 VAP (JPRx),
2018 WL 2676636 (C.D. Cal. May 8, 2018) .................................................. 16

*Beech Aircraft Corp. v. United States,*
51 F.3d 834 (9th Cir. 1995) ......................................................................... 14

*Bruno v. Bozzuto's, Inc.,*
311 F.R.D. 124 (M.D. Pa. 2015) ............................................................ 21, 22

*Cabrera v. Cordis Corp.,*
134 F.3d 1418 (9th Cir. 1998) ..................................................................... 15

*Call Delivery Systems, LLC v. Morgan,*
No. 2:20-cv-04637-CBM (PDx),
2022 WL 1252412 (C.D. Cal. Mar. 7, 2022) ...................................... 3, 16, 20

*Claar v. Burlington Northern Railroad Co.,*
29 F.3d 499 (9th Cir. 1994) ...................................................................... 5, 25

*Colby v. Newman,*
Nos. 92-35337, 92-35539,
2012 WL 12885118 (C.D. Cal. Nov. 20, 2012) ...................................... 3, 15

*Craftsmen Limousine, Inc. v. Ford Motor Co.,*
363 F.3d 761 (8th Cir. 2004) ....................................................................... 25

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
43 F.3d 1311 (9th Cir. 1995) ........................................................... 2, 13, 15

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) .............................................................................. 11, 25

*Diviero v. Uniroyal Goodrich Tire Co.,*
114 F.3d 851 (9th Cir. 1997) ....................................................................... 22

*Domingo ex rel. Domingo v. T.K.,*
289 F.3d 600 (9th Cir. 2002) ................................................................. 13, 15

*First Premium Services, Inc. v. Best Western International, Inc.,*
Nos. 95-1466-CIV, 99-0643-CIV,
2004 WL 7203535 (S.D. Fla. Jan. 8, 2004) ................................................ 20

*Fosmire v. Progressive Max Insurance Co.,*
277 F.R.D. 625 (W.D. Wash. 2011) ............................................................ 16

iii

*General Electric Co. v. Joiner,*
    522 U.S. 136 (1997)...........................................................................12, 13

*JRL Enterprises, Inc. v. Procorp Associates, Inc.,*
    No. Civ.A. 01-2893,
    2003 WL 21284020 (E.D. La. June 3, 2003) ........................................16

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)...........................................................................11, 25

*Lust ex rel. Lust v. Merrell Dow Pharmaceuticals, Inc.,*
    89 F.3d 594 (9th Cir. 1996) ....................................................................15

*McGlinchy v. Shell Chemical Co.,*
    845 F.2d 802 (9th Cir. 1988) .............................................................15, 24

*Mission Viejo Florist, Inc. v. Orchard Supply Co.,*
    No. SACV 16-01841-CJC(KESx),
    2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) .......................4, 20, 21, 25

*O'Conner v. Commonwealth Edison Co.,*
    13 F.3d 1090 (7th Cir. 1994) ..................................................................15

*Otis v. Doctor's Associates, Inc.,*
    No. 94 C 4227,
    1998 WL 673595 (N.D. Ill. Sept. 14, 1998)......................................20, 21

*R.F.M.A.S., Inc. v. So,*
    748 F. Supp. 2d 244 (S.D.N.Y. 2010) ................................................14, 25

*Sanderson v. International Flavors & Fragrances, Inc.,*
    950 F. Supp. 981 (C.D. Cal. 1996)..........................................................12

*Waymo LLC v. Uber Technologies, Inc.,*
    No. C 17-00939 WHA,
    2017 WL 5148390 (N.D. Cal. Nov. 6, 2017).......................................2, 21

*Wyatt Technology Corp. v. Malvern Instruments, Inc.,*
    No. CV 07-8298 ABC (MANx),
    2010 WL 11505684 (C.D. Cal. Jan. 25, 2010).........................................25

*Zenith Electronics Corp. v. WH-TV Broadcasting Corp.,*
    395 F.3d 416 (7th Cir. 2005) ..................................................................13

**RULES**

Fed. R. Evid. 702 ...........................................................2, 11, 12, 15, 22

Fed. R. Evid. 703 ..........................................................................12

**OTHER AUTHORITIES**

Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6269.6 (2d ed. Apr. 2022 update) .........12

iv

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

Defendants Keurig Dr Pepper Inc. ("KDP") and The American Bottling Company ("ABC") respectfully submit this memorandum of points and authorities in support of their Motion to Exclude the report, testimony and opinions of Bradford Cornell, a purported damages expert that Plaintiff Neurobrands, LLC ("Neuro") intends to proffer.

### I. Preliminary Statement

Neuro is a failed flavored water business that

.

Notwithstanding this severe financial distress, Neuro comes to Court and remarkably seeks ███████ in purported "lost profits" damages from its distributor, ABC. Unsurprisingly, given Neuro's financial condition, Neuro's request for "lost profits" ████ ████████████████████. Neuro's entire damages theory for "lost profits"—profits that Neuro never made and could never make—is not based on any proffered facts, reliable methodology, or any effort to consider other causes of Neuro's alleged injuries. Instead, it is impermissibly based solely on the pure speculation of Neuro's purported "expert" Bradford Cornell. Discovery has shown that (i) Cornell's opinions are based almost entirely on statements from Erik Toops, the general manager of Plaintiff Neuro, in off-the-record conversations, and (ii) Cornell did not even

[1] Unless noted, all emphases are added, and all citations, original alterations, and internal quotation marks are omitted from quoted material for ease of reading. References to the "Milstead Decl." refer to the Declaration of Virginia F. Milstead submitted with this Motion. References to all other declarations refer to those submitted with Defendants' Motions for Summary Judgment.

attempt to independently evaluate or verify the veracity of those statements. That is patently improper. The law expressly forbids a party from seeking to launder its own unsworn, unverified assertions through an expert report in an effort to create "a misleading facade of expertise" for its litigation position. *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017). As such, Cornell's opinions are unsalvageable, and subject to exclusion as a matter of law. The Court should not permit Neuro to present such terribly flawed opinions to a jury.

███████████████████████████████████████████████████. Such opinions and calculations are fatally flawed and legally impermissible for three separate and independently dispositive reasons.

*First,* Cornell failed to use "reliable principles and methods" to generate his damages figures. Fed. R. Evid. 702(c). Courts exclude expert opinions generated for litigation unless the expert used an objectively reasonable analytical method "practiced by (at least) a recognized minority of [experts] in [his or her] field." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("*Daubert II*"). Here, all of Cornell's damages opinions derive from his assumption that, but for ABC's alleged breaches of its Distribution Agreements with Neuro, ████████████████████. However, Cornell testified that he did not use *any* analytical method to arrive at this ████████ case sale figure, much less an objectively reasonable method endorsed by other experts in his field. (Milstead Decl. Ex. 1 at 81:23-82:3, 82:14-21, 83:15-17.) Instead, Cornell—who concedes ████████ (*see id.* at 21:1-13)—████████████████████████.

██████████████████████████████████████████████████. (*Id.* at 82:14-83:8.) This randomly picked but-for case sales number is the basis for all of Cornell's damages calculations. Because this number is the product of Cornell's uninformed, subjective guess, and not the product of an objectively reliable methodology, the Court should exclude all of Cornell's damages opinions under Rule 702. *See, e.g., Colby v. Newman*, 2012 WL 12885118, at *6 (C.D. Cal. Nov. 20, 2012) (excluding damages expert who relied on his subjective judgment and plaintiff's "unverified estimates" to calculate plaintiff's profit share rather than an objective methodology employed by forensic accountants).

***Second***, Cornell's opinions derive exclusively from "facts" he was given and assumptions he was provided, which the law does not permit. Cornell openly concedes that he did not rely on record evidence in this case. Rather, he relied on "facts" he received in off-the record phone calls with current Neuro management. But Cornell did nothing to independently evaluate these supposed "facts." That is not allowed. Rules 702 and 703 permit an expert to "rely on the opinions of others" only "if other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *Call Delivery Sys., LLC v. Morgan*, 2022 WL 1252412, at *1 (C.D. Cal. Mar. 7, 2022). Here, Cornell testified that he relied exclusively on two Neuro employees and Neuro's "industry expert" for the core factual assumptions that underpin his report, including the astounding assumption that *every* lost case sale in every state across the country—including the *22 states* in which ABC *did not even distribute Neuro*—was caused solely by ABC's contract breaches. (Milstead Decl. Ex. 1 at 52:10-22, 55:22-56:14; *id.* Ex. 2 ¶ 39.) Cornell accepted this assumption even though it is undisputed that numerous retailers stopped carrying Neuro during the relevant time period for reasons having nothing to do with ABC. ███████████████████████████████████████████████ ███████████. Yet, ███████████████████████████████████████ ███████████████████████████████████████████████████████. (*See, e.g., id.* Ex. 1 at 56:20-57:7.) Because Cornell failed to

3

exercise his independent expert judgment and evaluate the facts underlying his damages opinions, those opinions are unreliable as a matter of law, and the Court should exclude them. *See, e.g., Mission Viejo Florist, Inc. v. Orchard Supply Co.*, 2019 WL 13045054, at *3-4 (C.D. Cal. Feb. 28, 2019) (excluding damages expert who "made no effort to confirm" client's representations and accepted client's "unverified" sales estimates).

*Third*, Cornell failed to consider or attempt to disaggregate any alternative causes for Neuro's sales declines. Expert testimony is not reliable if the expert fails to consider potential "confounding factors" for the plaintiff's loss. *Avila v. Willits Env'tl Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011).

. (Milstead Decl. Ex. 1 at 106:18-107:7.)

. (*Id.* at 137:14-17.)

Instead,

. (*Id.* at 137:18-138:20.)

(*See* Rasheed Decl. Ex. 78 at 255:4-14; *id.* Ex. 118 at 77:24-78:14.) Nevertheless,

caused. (Milstead Decl. Ex. 1 at 178:17-179:5.) Instead,

. (*Id.*) As explained below, there are numerous additional causes for Neuro's declining case sales, all of which were self-inflicted and none of which had anything to do with ABC. Yet,

. Because Cornell made no effort to ensure that his damages figures reflect only financial harm attributable to ABC's alleged conduct, rather than other

4

confounding causes, his figures are unreliable as a matter of law. *See, e.g., Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of expert who made no "effort to rule out other possible causes for the injuries plaintiffs complain of").

While each of these failures is a sufficient and wholly independent basis to exclude Cornell's opinions, together they render Cornell's report and proposed testimony unreliable and unsuitable to be presented to a jury. The Court should exercise its gatekeeping function and exclude Cornell's opinions in their entirety.

## II.    Background

### A.    Factual Background

ABC is a beverage bottler and distributor that sources, produces, and distributes a wide range of beverages. (Bly Decl. ¶ 8.) KDP is a holding company that indirectly owns ABC. (Cole Decl. Ex. 1.) Neuro is a privately held LLC that markets itself as a "functional beverage" company. (FAC ¶ 17.)

In 2010 and 2011, ABC and Neuro entered into 26 separate Distribution Agreements granting ABC the exclusive right to distribute Neuro's products in 28 states. (Cole Decl. Exs. 9-31; Rasheed Decl. Ex. 37-38.) Pursuant to those Agreements, Neuro and third party co-packers manufactured Neuro products, and ABC distributed those products to retailers. (Bly Decl. ¶ 10.) ABC terminated the Distribution Agreements in August 2020, with an effective termination date of November 16, 2020. (Rasheed Decl. Ex. 70.)

During the entire period that the Distribution Agreements were in effect, ABC promoted, marketed, and sold Neuro's products in ABC's distribution territories. Among other things, ABC (1) sold and distributed Neuro to more than 50 retail chains, including major retailers like Walmart, Kroger, and Publix (Rasheed Decl. Ex. 7); (2) assisted Neuro in executing numerous product promotions at retail stores (such as coupons, temporary price reductions, and product giveaways), including 13 promotions at Kroger stores alone in 2018 and 2019 (*id.* Ex. 4 at 12:3-19); (3) helped Neuro maintain its shelf space with retailers by "coordinat[ing]" retailer meetings and "confer[ing] with Neuro on assembling

5

materials and information to present" at those meetings (FAC ¶ 39); and (4) held meetings with, and provided coaching and feedback to Neuro, including example strategies from other brands, to help Neuro develop actionable marketing plans that ABC's sales representatives could use to pitch Neuro to retail stores. (Bly Decl. ¶¶ 58-73.)

Despite ABC's distribution efforts, █████████████████████████████████ ████████████████████████████████████████. (Manning Decl. Ex. 1 ¶ 102.) ████████████████████████████████████████████████████████████ ████████████████████████. (*Id.*) █████████████████. (*Id.* at 43.) ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████. (Barnes Decl. Ex. 1 at Ex. 7; Rasheed Decl. Ex. 78 at 86:1-9, 91:16-22, 93:24-94:6; *id.* Exs. 12-14.) ███████████████████████████ █████████████████████. (Barnes Decl. Ex. 1 ¶¶ 7-10.)

The reality is that Neuro simply never caught on as a popular drink with consumers. ████████████████████████████████████████████████████████████ ██████████████████████████. (Barnes Decl. Ex. 2 at Exs. 9, 11-12.) ████████████████████████████████████████████████████████████ ████████████████████████████. (Rasheed Decl. Exs. 5-6.) ████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████. (*Id.* Exs. 10-11.) ██████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. (Young Decl. Ex. 1.) ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██. (Bly Decl. ¶¶ 25-35 & Ex. 2.)

. (Young Decl. Ex. 1; Rasheed Decl. Ex. 70.)

. (Young Decl. Ex. 1.)

. (Bly Decl. ¶¶ 25-37 & Ex. 2.)

. (*Id.* ¶¶ 18, 53.)

. (Rasheed Decl. Ex. 89 at 110:18-111:15.)

(Rasheed Decl. Ex. 22.)

(*Id.*)

(*see, e.g., id.* Ex. 78 at 122:18-24, 132:4-11

; (ii)

; (iii)

; (iv)

; (v)

; and (vi)

.

(*Id.* Exs. 15-16.)

. (*Id.* 119.)

In July 2020, Kroger—the nation's largest grocery store chain—decided to stop carrying Neuro products in all of its stores. (*Id.* Ex. 80 at 115:21-24.)

. (*Id.* Ex. 54.)

(*Id.* Ex. 70; *id.* Ex. 86 at 39:7-13, 62:3-8; *id.* Ex. 87 at 22:14-23:1, 84:8-13, 85:4-21; Taglienti Decl. ¶¶ 5-6; Davis Decl. ¶¶ 4-6; Walsh Decl. ¶¶ 5-9; Norell Decl. ¶¶ 4-5.)

In this lawsuit, Neuro attempts to lay the blame for all of these problems, and more, at ABC's feet.                            , Neuro asks the Court to award it approximately            in damages, most of which represents alleged lost *future* profits. (Milstead Decl. Ex. 2 at 2.)

(Rasheed Decl. Exs. 107-108.)

. (*Id.* Ex. 92 at 17:20-22.)

**B.    Cornell's Damages Report**

To substantiate its damages claim, Neuro submitted an expert report from Bradford Cornell. (Milstead Decl. Ex. 2.)

. (*Id.* Ex. 1 at 20:9-21:13, 53:4-6, 53:11-13, 58:2-11, 72:6-12, 83:9-14, 124:16-24.) Instead,

. (*Id.* at 40:12-15, 42:20-22, 52:10-17, 53:46, 53:11-13, 55:22-56:14.)



. (*Id.* at 56:1-7.)

(*Id.* at 56:8-14.)

(*See, e.g., id.* at 106:10-17; *infra* § III.B.)

. (Milstead Decl. Ex. 2 ¶ 28(a).)

. (Milstead Decl. Ex. 1 at 82:14-83:8; *id.* Ex. 2 ¶ 43.)

. (*Id.* Ex. 1 at 82:14-83:8.)

. (*Id.*)[2]

(*Id.* at 161:15-165:8.)

(*Id.* at 162:9.)

*First,*

. (*Id.*

---

[2] (*See also id.* at 85:20-86:4 ( ).)

9

Ex. 2 ¶¶ 28(b), 45.)[3]

(*Id.*

Ex. 1 at 162:17-165:8.)

. (*Id.* Ex. 2 at 2.)

*Second,*

. (*Id.* ¶ 38.)

. (*Id.* Ex. 1 at 55:22-58:24.)

. (*Id.* Ex. 2 ¶ 55; *id.* Ex. 2 at Exs. F, G; *id.* Ex. 1 at 82:14-21.)

. (*Id.* Ex. 1 at 162:17-165:8.)

. (*Id.* Ex. 2 at 2.)

*Third,*

. (*Id.* ¶ 43.)

[3]

. (*Id.* ¶ 55; *id.* Ex. 2 at Ex. G; *id.* Ex. 1 at 222:16-226:1.)

. (*Id.* at 226:2-16.)

. (*Id.*)

. (*Id.* Ex. 2 ¶ 54.)

. (*Id.* Ex. 1 at 223:8-226:1.)

. (*Id.* at 38:18-20, 223:8-226:1, 248:16-250:10.)

. (*Id.* Ex. 2 ¶ 28.)

. (*Id.*)

. (*Id.* at 2.)

## III.   The Court Should Exclude Cornell's Report And Testimony

"Expert evidence can be both powerful and quite misleading because of the difficulty" a jury may have "in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). To ensure that "experts" do not mislead the jury, the Rules of Evidence require district courts to act as "gatekeep[ers]" "to ensure" the testimony's "reliability." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "The objective of that requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

Expert evidence is considered reliable only if, among other things, the expert's testimony is: (1) "the product of reliable principles and methods," Fed. R. Evid. 702(c);

11

and (2) based on "facts or data" on which "experts in the particular field would reasonably rely." Fed. R. Evid. 703. These requirements ensure that the expert's opinion is based on "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Expert opinions that do not meet those standards may not be presented to a jury. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In applying these requirements to "expert testimony concerning damages by an economist or accountant," courts consider a number of factors including: (1) "whether the witness relied on an economic theory that the witness had previously used"; (2) "whether the witness relied on data that the witness independently verified as reliable"; (3) "whether the witness made factual assumptions that were speculative"; (4) "whether the witness can explain how the witness derived conclusions from data"; (5) "whether the witness employed generally accepted methods"; (6) "whether the witness formed an opinion before or after reviewing all the evidence"; and (7) "whether the witness considered all the variables bearing on the pertinent economic analysis." Wright & Miller, 29 Fed. Prac. & Proc. Evid. § 6269.6 (2d ed. Apr. 2022 update) (collecting cases). The party proffering the expert bears the burden to show that the expert's testimony is sufficiently reliable. *Sanderson v. Int'l Flavors & Fragrances, Inc.*, 950 F. Supp. 981, 993 (C.D. Cal. 1996).

Here, Cornell's testimony is unreliable because he did not: (1) utilize an objective methodology to determine Neuro's but-for monthly case sales; (2) independently verify any of the factual representations or assumptions Neuro fed him; or (3) consider any alternative causes for Neuro's declining case sales, ███████████████████████████ ██████████████████████. Because Cornell failed to tether his opinions to reliable methods or facts, the Court should exclude his testimony. It would be highly prejudicial to allow Cornell to present his unreliable, speculative opinions to a jury.

### A.   Cornell Failed To Use An Objectively Reliable Methodology

Under Rule of Evidence 702(c), an expert's opinions must be "the product of reliable principles and methods." Fed. R. Evid. 702(c). To meet this standard, "the party presenting the expert must show that the expert's findings are based on sound science" by providing

12

"some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. Where, as here, the expert's opinion was prepared for litigation (rather than through independent research), the expert must explain "precisely how they went about reaching their conclusions and point to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of [experts] in their field." *Id.* at 1319. It is not good enough for an expert to claim that his methods are reliable, and ask the court and jury to take his word for it. *See Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) (same); *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term.").

. (Milstead Decl. Ex. 1 at 81:17-22.)

(*Id.* at 81:23-82:3; 82:14-21.)

Cornell's approach was not based on any objective methodology that other experts in his field utilize.

(*Id.* at 83:15-17.)

13

. (*Id.* at 83:3-5.)

. (*Id.* at 83:9-11.)

. (*Id.* at 83:13-14.)

. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841-42 (9th Cir. 1995) (expert properly excluded when evidence was "within the ability and experience of the [jury]").

. (Milstead Decl. Ex. 1 at 30:23-34:13, 66:1-19, 164:19-165:2, 195:3-196:25, 236:5-11.)

(*id.* at 236:4);

(*id.* at 66:14-15);

(*id.* at 121:8-23); and (4)

(*id.* at 64:10-13, 66:1-9, 67:5-9, 232:6-19). Expert opinions are unreliable if the expert adjusts his approach to seem "reasonable" to a jury. *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 277 (S.D.N.Y. 2010) (excluding damages expert who engineered model to be "conservative," rather than reflect an objective, accurate estimate of plaintiff's loss).

In other words, Cornell cannot "point to some objective source . . . to show that [he]

14

ha[s] followed the scientific method," because he did not follow any objectively recognized method for projecting but-for case sales. *Daubert II*, 43 F.3d at 1319. Instead, he wants the Court and the jury to simply accept that Neuro would have ███████████████████ ████████████████████████ ████████████████████████ ████████████████████████ ████████ *See O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994) (affirming exclusion of expert who relied on a subjective methodology). Because Rule 702 forbids an expert from employing a purely subjective approach in place of an objective methodology, ██████████████████████ ████████████████████████████ is unreliable. *See, e.g., Daubert II*, 43 F.3d at 1319 (excluding experts' testimony where the experts did not "point to any external source to validate that methodology"); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 806-07 (9th Cir. 1988) (affirming exclusion of damages expert who relied on his own "unsupported assumptions" to calculate lost sales); *Domingo*, 289 F.3d at 607 (affirming exclusion of expert when there was no "objective source, peer review, clinical tests, establishment of an error rate or other evidence to show that [the expert] followed a valid, scientific method in developing his theory"); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) ("Dr. Brautbar did not identify any such objective source, or demonstrate that he followed a scientific method embraced by at least some other experts in the field. His testimony therefore does not satisfy *Daubert* or Rule 702."); *Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 597 (9th Cir. 1996) (similar); *Colby*, 2012 WL 12885118, at *6 (excluding damages expert who relied on his subjective judgment to calculate plaintiff's profit share rather than an objective methodology used by accountants). ████████████████████████████ . (*See* Milstead Decl. Ex. 2 ¶ 28.) ████████████████████████, all of Cornell's damages opinions are unreliable and improper. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment (explaining that "any step that renders the [expert's] analysis unreliable renders

15

the testimony inadmissible"). The Court should thus exclude all of Cornell's opinions.

### B.    Cornell Failed To Verify Independently The Facts On Which He Relied

Under Rules of Evidence 702 and 703, an "expert can appropriately rely on the opinions of others" only "if other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *Call Delivery Sys.*, 2022 WL 1252412, at *1. An expert's opinions are unreliable and inadmissible if he bases his opinions on facts that others provided without independently evaluating or verifying them. *See, e.g.*, *Baker v. Firstcom Music*, 2018 WL 2676636, at *2 (C.D. Cal. May 8, 2018) ("[E]xperts are expected to verify the reliability of the data underlying their conclusions independently instead of simply adopting the representations of an interested party."); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 630 (W.D. Wash. 2011) ("The rules do not permit an expert to rely upon opinions developed by another expert for purposes of litigation without independent verification of the underlying expert's work."). While a damages expert may assume liability, this does not mean the expert can also assume the truth of all facts necessary to support his or her opinion. *See, e.g.*, *JRL Enters., Inc. v. Procorp Assocs., Inc.*, 2003 WL 21284020, at *8 (E.D. La. June 3, 2003) (collecting cases where "courts have . . . excluded expert opinions where the expert failed to conduct any independent research to determine the reliability of his assumptions").

### 1.    Cornell Impermissibly Failed To Independently Examine Or Verify Any "Facts" Supporting His Supposed "Opinions"

[4]

(Milstead Decl. Ex. 1 at 35:7-14, 42:20-22.)

---

[4] ████████████. (Rasheed Decl. Ex. 98 at 55:6-13.)

16

(*See id.* Ex. 2 ¶¶ 30-31, 39, 44, 54, 59-60 & nn. 33, 38, 44, 53.)

. (*See id.* Ex. 1.)

. (*Id.* at 38:18-20, 42:4-6, 55:10-15, 55:22-58:24.)

. (*Id.* at 55:22-56:7; *id.* Ex. 2 ¶ 39.)

. *See infra*

§ III.C.

(*Id.* Ex. 1 at 56:20-57:7, 58:25-59:6.)

. (*Id.* at 53:4-24, 58:25-59:6.)

. (*Id.* at 56:20-58:1.)

(*Id.* at 58:22-24.)

. (*See id.*

at 78:24-79:23, 120:4-23, 126:21-129:24; *id.* Ex. 2 ¶ 53 n.44.)

(*id.* Ex. 1 at 80:6-22, 128:24-129:20, 131:2-15, 188:25-189:26)—

(*Id.* at 123:3-124:15.) Those assumptions do not even make sense, yet Cornell accepted them without question or independent evaluation.

[5] (*Id.* Ex. 2 ¶¶ 44-45; *id.* Ex. 1 at 213:19-214:4.)

(Rasheed Decl. Ex. 98 at 305:20-306:4.)

. (Milstead Decl. Ex. 1 at 157:9-158:13, 160:5-14.)

. (*Id.* at 157:9-158:13.)

. (*Id.* at 222:16-223:18.) To

---

[5] ABC's Distribution Agreements with Neuro allowed ABC to terminate the Agreements at any time on 90 days' notice. (*See, e.g.*, Cole Decl. Ex. 11 § 6.c.) Neuro does not allege that ABC's termination decision was wrongful.

18

calculate lost *future* profits,

in the course of business. (*Id.* at 226:2-16.)

first the 52,500 number and then the 180,000 number. (*Id.* at 222:16-223:18.)

- 

. (*Id.* Ex. 2 ¶¶ 55, 60.)

. (*Id.* Ex. 1 at 225:1-226:1.)

19

● 

at 139:1-10.)

. (*Id.* at 243:6-247:14.)

. (*Id.* Ex. 1

. (Rasheed Decl. Exs. 15-16.)

. (*Id.* Ex. 119.)

. (Milstead Decl. Ex. 1 at 140:9-141:11, 155:3-156:5.)

. (*Id.* at 56:21-57:7, 58:12-59:6.)

. Because Cornell failed to independently evaluate the alleged facts that serve as the basis for his report, his opinions are unreliable. *See, e.g., Mission Viejo*, 2019 WL 13045054, at *3-4 (excluding damages expert who "made no effort to confirm" client's statements and accepted "unverified" sales estimates); *Call Delivery*, 2022 WL 1252412, at *1 (excluding expert whose "opinion is based entirely on information he received during verbal communication" with client); *First Premium Servs., Inc. v. Best W. Int'l, Inc.*, 2004 WL 7203535, at *3 (S.D. Fla. Jan. 8, 2004) (excluding damages expert due to "unquestioning reliance" on numbers provided by client); *Otis v. Dr.'s Assocs., Inc.*, 1998 WL 673595, at *4 (N.D. Ill. Sept. 14, 1998) (excluding damages expert who based opinion on sales estimates that had not "been tested for accuracy").

## 2. Cornell's Lack of Industry Expertise Does Not Excuse His Failure To Investigate The Factual Assumptions Underlying His Report

. (*See, e.g.*, Milstead Decl. Ex. 1 at 58:2-11, 71:8-15, 249:17-250:2.)

(*Id.* at 161:9-162:3.)

(*Id.* at 80:13-22.)

Cornell has it exactly backwards. "[I]ndependent verification is particularly important where, as here, the contested expert[] lack[s] familiarity with the pertinent industry." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 & n.138 (M.D. Pa. 2015) (collecting cases and excluding damages experts who were not familiar with the industry and did not independently evaluate pro forma financial statements); *see also Mission Viejo*, 2019 WL 13045054, at *4 (excluding expert who deferred to owner's financial estimates because "she's the one who lives and breathes this business," when expert "engaged in no independent analysis to determine whether [estimate] was accurate"). , it is "particularly important" that he independently verify the facts on which he bases his opinions. (Milstead Decl. Ex. 1 at 162:9)— . (*Id.* at 161:15-165:8.) That is not reliable or admissible expert testimony; it is an attempt to launder Neuro's unverified, unsworn statements—or worse, its rank speculation—through "a misleading facade of expertise." *See Waymo*, 2017 WL 5148390, at *5 (excluding damages expert who "simply adopted the opinions of others and performed grade-school arithmetic counsel can do on an easel"); *Otis*, 1998 WL 673595, at *4 (excluding expert when he had "shown no

21

evidence indicating that the methodology [he] used is anything more than an exercise in arithmetic based on inherently unreliable values"). If Cornell was content to "take a back seat to [Toops', Nagle-Wood's, and Clements'] superior familiarity with the industry," he should have "turned down the offer to testify" rather than representing he could bring legitimate and reliable expertise to this case. *Bruno*, 311 F.R.D. at 144.

### C. Cornell Failed To Consider Any Alternative Explanations For Neuro's Declining Case Sales

In determining whether a damages expert's opinions are reliable, courts must consider "[w]hether the expert has adequately accounted for obvious alternative explanations" for the plaintiff's damages. Fed. R. Evid. 702 advisory committee note to 2000 amendment. Under that standard, courts routinely exclude experts who fail to consider "confounding factors" in their analysis. *See, e.g.*, *Avila*, 633 F.3d at 839; *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 n.1 (9th Cir. 1997) (affirming exclusion of expert who could not rule out alternate explanations for causation).

Ruling out alternative explanations is particularly important for damages experts like Cornell. The American Institute of Certified Public Accounting—which Cornell testified is a "reputable" "professional accounting association" (Milstead Decl. Ex. 1 at 108:1-17)— advises practitioners that:

> A practitioner's analysis of the data and other evidence may indicate that multiple acts, including multiple acts by the defendant, contributed to the plaintiff's loss. The practitioner should be aware, however, that not all of the defendant's acts may be violative (included in the causes of action before the court) or wrongful. If the practitioner includes the impact of non-violative acts in the calculations of damages, then the reliability and relevance of the damages may be called into question.

(Milstead Decl. Ex. 3 at 16.)

22



(Milstead Decl. Ex. 1 at 107:12-20.)

. (*Id.* at 106:2-16.)

. (*Id.* at 106:18-107:17.)

. (*Id.* at 131:16-137:13.)

. (*Id.* at 136:10-137:7.)

. (*Id.* at 137:14-138:20.)

. (*Id.* at 131:16-138:20.)

. (Rasheed Decl. Exs. 15-16.)

. (Milstead Decl. Ex. 1 at 142:22-143:1.)

. (*Id.* at 155:20-156:5.)

(*Id.* at 156:1-5.)

. (*Id.* at 172:1-10.)

23

███████████████████████████████. (Rasheed Decl. Ex. 78 at 255:4-14; *id.* Ex. 118 at 77:24-78:14.) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Milstead Decl. Ex. 1 at 178:17-179:5.) ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (*Id.* at 179:6-15.) This omission is critical. Neuro agrees that ABC was not "required to purchase specific quantities of its products." (ECF 15 at 11:5-6 (Neuro MTD Opp'n Br.); *see also* ECF 36 at 8:15-16 (MTD Order accepting Neuro's contention that it "does not contend ABC breached the distribution agreements by failing to purchase specific quantities of its products").) This makes sense. ABC is a distributor. It buys Neuro products in order to sell them to retailers, who then sell the drinks to consumers. (Bly Decl. ¶ 10.) ABC therefore purchases only as many cases of Neuro drinks as it needs to meet the demand of retailers and end consumers. (*Id.* ¶ 18.) If consumers stop drinking Neuro, then retailers will stop purchasing cases of it (like Target did), and ABC will, in turn, order fewer cases from Neuro. (*Id.* ¶¶ 18, 53.) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Milstead Decl. Ex. 1 at 178:17-179:15.) ██████████████████. (*Id.* at 178:17-179:15; Rasheed Ex. Decl. 98 at 301:7-14.) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See McGlinchy*, 845 F.2d at 806 (affirming exclusion of expert who "did not relate the loss to specific acts" by

24

defendants); *Mission Viejo*, 2019 WL 13045054, at *3 (excluding expert who "fail[ed] to connect her damages calculation to the allegedly harmful acts"); *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11505684, at *5 (C.D. Cal. Jan. 25, 2010) (similar).

At bottom, Cornell's "model"—to the extent it can be called a model—is inherently unreliable and should never be presented to a jury ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (Milstead Decl. Ex. 1. at 36:23-37:10, 137:18-24.) The law does not permit that. Indeed, this is the very reason why district courts act as "gatekeepers"—to ensure that expert reports are sufficiently reliable so that they assist a jury, rather than confuse it. *Daubert*, 509 U.S. at 595; *Kumho Tire*, 526 U.S. at 152. The Court should exercise its gatekeeping duty here and exclude Cornell's opinions in their entirety. *See, e.g., Claar*, 29 F.3d at 502 (affirming exclusion of expert who made no "effort to rule out other possible causes for the injuries plaintiffs complain of"); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 777 (8th Cir. 2004) (affirming exclusion of damages expert who "did not determine whether other factors, including the emergence of two direct competitors, may have affected [plaintiff's] growth rate"); *R.F.M.A.S.*, 748 F. Supp. 2d at 250, 270-77 (excluding damages expert who failed to adequately consider alternative causes of plaintiff's damages, and where expert's "quantification of plaintiff's damages" was not "the product of an accounting methodology that is appropriate in light of the particular facts of this case").

## CONCLUSION

For these reasons, the Court should exclude Cornell's opinions and testimony.

DATED: November 30, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____/s/ Peter B. Morrison_____
PETER B. MORRISON
Attorneys for Defendants